**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 21 CR 50023-1 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Marcus Williams | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Marcus Williams has been indicted on one count of possessing a machinegun in violation of 18 U.S.C. § 922(o), one count of possessing with intent to distribute fentanyl and cocaine base in violation of 21 U.S.C. § 841(a)(1); one count of possessing a machinegun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(ii); and one count of possessing a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Before the Court is Mr. Williams' *pro se* motion brought under Federal Rule of Criminal Procedure 6(b)(1) to "challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected." Dkt. 214. As relief, he seeks a stay of the proceedings under 28 U.S.C. § 1867(a). Reply [223] at 7.

As best as the Court can tell from his motion, Mr. Williams is challenging both the September 2019 Grand Jury that returned his original indictment, and the Special April 2021 Grand Jury that returned his superseding indictment, on the following grounds:

(1)  the government abused the grand jury process by procuring his indictment and superseding indictment using just one witness, who was asked only leading questions;

(2)  grand juries in the Western Division are biased as demonstrated by the fact that no juror asked any questions of the one witness the government presented;

(3)  part of the witness' testimony presented to the grand jury that returned his superseding indictment was the "typed or recorded" testimony presented to an earlier grand jury that returned his original indictment;

(4)  the fact that his case number didn't change between the time one grand jury returned his original indictment and a different grand jury returned his superseding indictment is "curious[]";

(5)  grand juries of the Western Division are not composed of a fair cross-section of the community; and

(6)  African-Americans are being "possibly in some way other than systematically excluded" from grand juries in the Western Division.

Motion [214] at 3-4. To support his motion, he seeks the following materials: (1) documents establishing that 16-23 jurors were summoned as is required by Fed. R. Crim. P. 6(a)(1); (2) documents establishing that 12 jurors concurred in both his original indictment and his superseding indictment as is required by Fed. R. Crim. P. 6(f); and (3) summonses that went to

the grand jurors with all information redacted except their age, race, and occupation. *Id.* at 1. In addition to the materials he seeks, he also asks the Court to appoint an expert statistician of his choosing.

The Court ordered briefing. Dkt. 216. The government has now responded, Dkt. 219, and Mr. Williams has replied, Dkt. 223. The motion is therefore fully briefed.

The Court first addresses Mr. Williams' requests for materials to support his motion challenging his grand juries. The Court previously pointed out in Dkt. 139 that Magistrate Judge Jensen's docket entry from September 14, 2021, Dkt. 36, noting that the Special April 2021 Grand Jury returned his superseding indictment, establishes that at least 16 grand jurors were summoned because it takes at least 16 grand jurors to constitute a quorum, *see* Fed. R. Crim. P. 6(a)(1). That same order also establishes that at least 12 grand jurors concurred in his superseding indictment because at least 12 jurors must concur to return the indictment, *see* Fed. R. Crim. P. 6(f). Magistrate Judge Jensen's docket entry from April 20, 2021, Dkt. 4, establishes the same two points for the September 2019 Grand Jury that returned his original indictment. Accordingly, he already has the documents he requests.

His remaining request is for jury summonses. According to the government, summonses to jurors do not contain information about the juror's age, race, or occupation. Because the summonses do not contain the information he seeks, his request for them is denied. Adhering to the principle of party presentation, *see Margolin v. Nat'l Assoc. of Immigration Judges*, 146 S.Ct. 1285, 1288 (2026) (per curiam), the Court limits itself to Mr. Williams' request for jury summonses.

The Court now turns to Mr. Williams' specific challenges to the grand jury. The Court already addressed the first and third grounds when it denied his earlier motion to dismiss the indictment. Dkt. 211. Moreover, under 28 U.S.C. § 1867(a), any challenge to a grand jury must be raised "within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." Mr. Williams knew these grounds for challenging the grand jury when he first raised those two grounds in his motion to dismiss the indictment filed January 15, 2026, and so his attempt to raise them again now is untimely.

His second and fourth grounds are also untimely. Although he did not raise jurors' lack of questions for the witness, or the fact that both grand juries proceeded under the same case number, as grounds in his first motion, he had all of that information available to him when he filed his first motion to dismiss the indictment, and so had "discovered or could have discovered" those grounds long ago.

In his final two grounds, he contends that African-Americans are "possibly in some way" being excluded from grand juries in the Western Division, and that grand juries are not composed of a fair cross-section of the community. Motion [214] at 4. The selection of jurors for both grand juries and petit juries is governed by the Jury Selection and Service Act of 1968. *See* 28 U.S.C. § 1861 *et seq.* Under 28 U.S.C. § 1983, each district court must "devise and place into operation a written plan for random selection of grand and petit jurors" designed so that jurors

- 2 -

are "selected at random from a fair cross section of the community in the district or division wherein the court convenes," and to ensure that no potential jurors are excluded "on account of race, color, religion, sex, national origin, or economic status." In response to an earlier request for grand jury materials, the Court provided to Mr. Williams copies of the Plan for Random Selection of Jurors that the Northern District of Illinois placed into operation in 2020 pursuant to 28 U.S.C. § 1983. Dkt. 206 ("the Plan"). It also provided to him a copy of the Study of the Revised Plan for the U.S. Dist. Court, Northern District of Illinois, whose stated purpose was to assess whether revisions made to the Plan for Random Selection of Jurors implemented from 2013 to 2017 "are achieving their desired effect" of "increas[ing] the diversity of the District's jury pools." Dkt. 206-1 ("the Study") at 1.

The procedures for challenging grand juries are set out in 28 U.S.C. § 1867. Under 28 U.S.C. § 1867(a), to prevail on a motion challenging a grand jury, a defendant must establish a "substantial failure to comply with the provisions of" the Jury Selection and Serve Act. As a threshold, the defendant challenging the grand jury must include with his motion "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(d).

Mr. Williams has provided no such sworn statement of fact. Instead, he relies on conjecture. For instance, he believes that African-Americans are "possibly in some way other than systematically" being excluded from grand juries. Motion [214] at 4. But he offers no facts to support his suspicions. Instead, he points to portions of the Plan and the Study that the Court provided that he contends suggests that jurors are not being selected from a fair cross section of the community, and that African-Americans are being excluded.

First, he notes that the Plan applies only to the Northern District of Illinois' Eastern Division, whereas Mr. Williams' grand jurors were drawn from the Western Division. But the Plan specifically states that its provisions "apply with equal force and effect to both Divisions of this District." The Plan [206] at 2. Nevertheless, Mr. Williams notes that some of the charts in the Study included data from zip codes located only in the Eastern Division, specifically Chicago, citing charts on pages 21 and 22 of the Study. The Study [206-1] at 21-22. But those charts depict the ten zip codes with the highest number of remailings for undeliverable addresses. They don't establish that the Plan applies only to the Eastern Division.

Second, he contends that the Study's analysis is outdated because it looked only to the makeup of Master Jury Wheels for 2009 through 2015. But he does not suggest any newer analysis is available. In addition, the fact that the Study does not include data from newer Master Jury Wheels does not suggest that the Master Jury Wheel from which Mr. Williams grand juries were drawn excluded African-Americans. If anything the Study suggests just the opposite: "The District's jury plan revisions are working as intended to increase representation for African-American and Hispanic citizens." The Study [206-1] at 16-17. Mr. Williams notes the Study also reports that African-Americans were nevertheless underrepresented by 25% on the 2015 Qualified Jury Wheel (a subset of the Master Jury Wheel left after removing potential jurors who were disqualified, barred, or excused pursuant to the Plan). *Id.* at 17. But given the Study's acknowledgement that the Northern District of Illinois had revised its plan to increase representation, and that the revisions were working, Mr. Williams has not established a

"substantial failure" of the Plan to avoid excluding jurors based on race, color, or any other prohibited basis.

Third, he contends that grand jurors for the Western Division are chosen from mostly rural counties where African-Americans are less concentrated, compared to highly-populated urban areas like Rockford. But he does not explain why that would lead to an underrepresentation of African-Americans on grand juries. One would expect that the Plan's requirement that "each county or political subdivision is proportionately represented in the master wheel" would yield more jurors from more highly populated areas than less populated areas. The Plan [206] at 3. But all this is conjecture, not the type of facts 28 U.S.C. § 1867(d) requires that Mr. Williams present to successfully challenge his grand juries.

Finally, Mr. Williams asks the Court to appoint a statistics expert of his choosing to obtain and analyze data on the "total amount of African Americans residents in Rockford, Il, to compare the ratio of African Americans being selected as grand jurors from lower income and povertized communities versus white and other citizens." Motion [214] at 5-6. Mr. Williams raises his motion under Federal Rule of Criminal Procedure 17(b), but under that rule the court can pay only the costs to serve a subpoena and the accompanying witness fee (which under 28 U.S.C. § 1821(b) is currently $40 for each day's attendance at court or in a deposition). Under 18 U.S.C. § 3006A(e)(1), a court should provide expert services to an indigent defendant where "a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Alden*, 767 F.2d 314, 318-19 (7th Cir. 1984) (international quotation marks and citation omitted). But before doing so a court must ensure the defendant has a plausible defense, and is not just engaging in a "fishing expedition." *Id.* at 318; *see also United States v. Cravens*, 275 F.3d 637, 639 (7th Cir. 2001) (applying the *Alden* test). The decision whether to grant or deny an expert under § 3006A is left to the discretion of the district court. *See Alden*, 767 F.2d at 319.

As discussed above, Mr. Williams has offered no facts suggesting any "substantial failure" of the Northern District of Illinois' to comply with the requirements of the Jury Selection and Service Act of 1968 to select jurors from a fair cross section of the community, and to not excluded jurors on protected bases such as race and color. To the contrary the Study establishes that the Northern District of Illinois has been increasing the diversity of the jury pool. The Study [Dkt. 206-1] at 16. Because he seeks an expert not to analyze facts he's presented, but rather to engage in a fishing expedition, in an exercise of this Court's discretion his request is denied.

For all these reasons, his motion challenging his grand juries [214] is denied.

Date:  June 22, 2026          By:  _____
                                   Iain D. Johnston
                                   United States District Judge

- 4 -